Brett L. Gibbs, Esq. (SBN 251000)
Prenda Law Inc.
38 Miller Avenue, #263
Mill Valley, CA 94941
415-325-5900
blgibbs@wefightpiracy.com

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HARD DRIVE PRODUCTIONS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DOES 1-90, ) <br> ) <br> Defendants. ) <br> _____ ) | **No. C-11-3825 HRL** <br><br> **PLAINTIFF'S SUPPLEMENTAL BRIEFING REGARDING THE COURT'S OCTOBER 17, 2011 ORDER** |

On October 17, 2011, the Court ordered Plaintiff to submit supplemental briefing on three particular issues in advance of the hearing scheduled for November 29, 2011, on Plaintiff's Ex Parte Application for Leave to Take Expedited Discovery. (ECF No. 14.) Plaintiff hereby addresses each of the issues identified by the Court in its October 17, 2011, order.

**1. The date(s) and time(s) when the IP address(es) associated with each Doe defendant appeared in the relevant BitTorrent swarm(s).**

Exhibit A to Plaintiff's Complaint identifies specific dates and times on which Plaintiff's agents observed infringing activity occurring via the corresponding enumerated Internet Protocol address. (ECF No. 1 at 15-16.) The timestamps listed on Exhibit A range from May 18, 2011 to July 20, 2011—approximately two months. (*Id.*) Plaintiff would note three items for the Court.

First, the Doe defendants in this case participated in a common swarm. Plaintiff filed multiple lawsuits relating to the same copyrighted work at issue in this suit because infringement of the work was associated with multiple swarms. *See* Declaration of Brett L. Gibbs (hereinafter "Gibbs Decl.") ¶ 2, Exhibit A to this Application. Each lawsuit corresponds to a specific swarm. *Id.*

Second, the timestamps listed on Exhibit A do not represent the full degree of a Doe's participation in the swarm. Instead, each timestamp identifies a mere instance of the Doe's participation. *Id.* ¶ 3. Specifically, each timestamp relates to a date and time on which an individual associated with the corresponding IP address was observed engaging in unauthorized distribution of a piece of the copyrighted work in violation of Plaintiff's copyrights. *Id.* Further, it is difficult to gauge the full extent of a given Doe's participation in the swarm without receiving identifying information from the ISP's. One reason for this is that a single Doe may be associated with multiple IP addresses. In a case filed by Plaintiff's counsel's firm in the Northern District of Illinois, *each* of the 28 IP addresses listed in the complaint was associated with the *same* individual. *Id.* ¶ 4. The reason this occurs is that most consumer IP addresses are dynamic. Dynamic IP addresses are reset at sporadic intervals when, for example, a cable modem is reset. *Id.*

Finally, the permissive joinder rules do not require contemporaneous participation in the swarm. Claims arise out of the "same transaction or occurrence" for the purposes of joinder if they share similar factual backgrounds. *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). Claims possess sufficient factual similarity if they "arise out of a systematic pattern of events." *Bautista v. Los Angeles County*, 216 F.3d 837, 842-43 (9th Cir. 2000) (citations omitted). To aid in their application of the "transaction or occurrence test," courts look to how the test is applied in other provisions of the Federal Rules, such as Rule 13(a). *Mosley v. General Motors Corporation*, 497 F.2d 1330, 1332-33 (8th Cir. 1974). The Supreme Court states that the meaning of "transaction," as used in Rule 13(a), "may comprehend a series of many occurrences, depending not so much upon the immediateness of their own connection as upon their logical relationship." *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610 (1926). Accordingly, "Rule 20 would permit all reasonably related claims by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary." *Mosley*, 497 F.2d at 1333. Participation in a single swarm is sufficient to establish similar factual background and a strong logical relationship. *See Patrick Collins, Inc. v. Does 1-2,590*, No. C 11-02766 MEJ, 2011 WL 3740487 *6 (N.D. Cal. Aug. 24, 2011) ("[T]he Court finds that Plaintiff has at least presented a reasonable basis to argue that the BitTorrent protocol

functions in such a way that peers in a single swarm downloading or uploading a piece of the same seed file may fall within the definition of 'same transaction, occurrence, or series of transactions or occurrences' for purposes of Rule 20(a)(1)(A).").

Further, the Supreme Court in *United States v. Mississippi*, reversed the district court's severance of defendants where plaintiff alleged that "registers had acted and were continuing to act as part of a state-wide system designed to [discriminate]." 380 U.S. 128, 142 (1965). In a similar fashion, Plaintiff alleged, *inter alia*, that the putative defendants acted and were continuing to act as part of a system designed to infringe on one of its copyrighted works. (*See* Compl.)

**2. To what extent IP addresses provide approximate or likely location(s) of each Doe Defendant based on their respective IP addresses?**

Geolocation is the leading method for associating an IP address with an approximate geographic location. Ingmar Poese et al. *IP Geolocation Databases: Unreliable?* ACM SIGCOMM Computer Communication Review, 41(2), Apr. 2011, at 1. A variety of free and commercial databases allow persons to query the likely geographic location of an IP address. *See, e.g. What Is My IP Address?*, http://www.whatismyipaddress.com. However, researchers have concluded that the "accuracy [of these databases] is more than questionable…." Ingmar Poese et al. *IP Geolocation Databases: Unreliable?*, Apr. 2011, at 1. Geolocation is believed to be reliably accurate (i.e. 96-98%) in predicting the country in which an IP address is located. *Id.* at 4. However, on more local levels the accuracy quickly erodes. *Id.* For example, the researchers concluded that "in most cases … the location given by the databases is off by several hundreds, even thousands of kilometers." *Id.*

Plaintiff's counsel's experience has been consistent with the results of geolocation accuracy scholarship. To date, geolocation has been very accurate in predicting the nation of residence of an IP subscriber. Gibbs Decl. ¶ 5. However, on the sub-national level IP address resolutions become much less reliable. *Id.* By way of example, in a pair of cases filed by Plaintiff in the States of Illinois and Indiana respectively, Plaintiff used geolocation in an attempt to include only residents of those states. Gibbs Decl. ¶ 6. A single individual whose dynamic IP address changed during the course of monitoring was associated with an IP address in each case. *Id.* Geolocation of his first IP address

3

predicted his location to be Illinois while geolocation of his refreshed IP address predicted his location to be Indiana. *Id.* Plaintiff does not consider geolocation to be a litmus test for personal jurisdiction or venue. Nevertheless, it is the only available means to attempt in the first instance to limit a given suit to residents of a particular state and its use has been championed even by organizations that traditionally oppose copyright enforcement efforts. *See* Decl. of Seth Schoen ¶¶ 2, 4, 15–22, *OpenMind Solutions, Inc. v. Does 1–1,295*, No. 3:11-cv-00092-GPM-SCW (S.D. Ill. Mar. 22, 2011), ECF No. 15-2.

**3. Specifically, how Plaintiff intends to proceed if it does obtain the names and addresses of the ISP subscribers associated with each IP address if the limited discovery requested is permitted?**

If Plaintiff obtains the names and addresses of the ISP subscribers associated with each IP address, it intends to proceed as follows. First, Plaintiff will attempt to contact the subscriber identified in the ISP subpoena return. Gibbs Decl. ¶ 7. If the subscriber is reachable, Plaintiff will meet and confer with the subscriber, inform him of the litigation and, depending on the circumstances, may extend an offer of settlement. *Id.* ¶ 8. If the subscriber can offer a valid defense that is substantiated by credible evidence, Plaintiff will drop its case entirely as to the subscriber. *Id.* If the subscriber's defense is that some other member of his household committed the infringement, Plaintiff will likely name and serve the infringer with process. *Id.* ¶ 9. If the subscriber is unable to offer a valid defense and rejects Plaintiff's settlement offer, then Plaintiff will likely name and serve the subscriber with process. *Id.* If the subscriber deliberately evades Plaintiff's attempt to meet and confer, then Plaintiff *may* need to request further discovery from the Court. *Id.* ¶ 10.

## CONCLUSION

As the Court's request, Plaintiff would be pleased to further supplement its discussion of any of the matters discussed herein.

///

///

///

///

|   |   |
|---|---|
|   | Respectfully Submitted, |
|   | HARD DRIVE PRODUCTIONS, INC. |

**DATED: November 22, 2011**

By:     /s/ Brett L. Gibbs, Esq.
Brett L. Gibbs, Esq. (SBN 251000)
Prenda Law Inc.
38 Miller Avenue, #263
Mill Valley, CA 94941
415-325-5900
blgibbs@wefightpiracy.com
*Attorney for Plaintiff*