Brett L. Gibbs, Esq. (SBN 251000)
Of Counsel to Prenda Law, Inc.
38 Miller Avenue, #263
Mill Valley, CA 94941
415-325-5900
blgibbs@wefightpiracy.com

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HARD DRIVE PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> DOES 1–90, <br><br> Defendants. | **No. C-11-03825 HRL** <br><br> **PLAINTIFF'S MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION** |

    Plaintiff Hard Drive Productions, Inc. moves this Court, under Northern District of California Local Rule 7-9 ("LR 7-9"), for leave to file a motion for reconsideration of the Court's March 30, 2012 Order denying Plaintiff's application for leave to take expedited discovery. (ECF No. 18.) The Court should grant Plaintiff's motion because there is "a manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." LR 7-9(b)(3). With utmost respect to the Court, the Court's requirement that Plaintiff "show it [is] 'very likely' that discovery would lead to identification of Doe defendants" is simply not the correct legal standard for evaluating Plaintiff's discovery application. (ECF No. 18 at 11:12–13.) Nor is it the legal standard Plaintiff set forth in its application. (ECF No. 6 at 4–6.) Because the Court failed to apply the correct legal standard, as set forth in Plaintiff's discovery application, the Court should grant Plaintiff's motion.

Furthermore, to the extent that the Court's decision is based upon mistrust of Plaintiff's litigation strategy and motives, a motion for reconsideration would also be merited. Plaintiff wishes to address these misapprehensions and explain how the procedures it follows are consistent with the law, Plaintiff's counsel's ethical obligations, and the Court's prudential concerns. This is particularly important where, as here, the law entitles Plaintiff to learn the identities of individuals who have harmed it, but mistrust may have formed at least a partial basis for the Court's denial.

Finally, the Court should grant Plaintiff leave to file a motion for reconsideration of the Order because the decision leaves Plaintiff and other similarly-situated copyright holders with literally no enforceable remedy at law to combat digital infringement of its intellectual property rights in their works. Plaintiff's livelihood is threatened by a clandestine community of Internet pirates who collaborate to ensure that Plaintiff's works are widely distributed without Plaintiff's permission. The Court acknowledged that its decision would "frustrate . . . copyright holders," despite its sympathy towards Plaintiff's argument "that lawsuits like this one are *the only way* for [copyright holders] to find and stop infringers." Indeed, the Order would make it impossible for Plaintiff to exercise the legal protections for its works granted by the Copyright Act against any infringer who can hide behind an Internet Protocol address. (ECF No. 18 at 11:16–21 (emphasis added).) The Court's factual declaration that "the technology that enables copyright infringement has outpaced technology that prevents it" does not justify what amounts to a judicial taking of the due process and remedies to which Plaintiff is absolutely entitled under the Copyright Act. The Court should grant Plaintiff's motion. (ECF No. 18 at 11:17–19.)

## FACTUAL BACKGROUND

Plaintiff brought this action on August 3, 2011 against unknown individuals for copyright infringement and civil conspiracy. (ECF No. 1.) In order to identify the unknown infringers, Plaintiff brought an application for leave to take expedited discovery on August 10, 2011. (ECF No. 6.) In the discovery application, Plaintiff sought leave to issue subpoenas on various Internet service providers ("ISPs") that possessed the identifying information of Internet subscribers of Internet Protocol ("IP")

addresses associated with the copyright infringement. (*Id.*) In the application, Plaintiff explained that ISPs only retain user data only for "a limited period of time before erasing the data." (*Id.* at 8.)

On March 30, 2012 the Court issued an order denying Plaintiff's discovery application. (ECF No. 18.) The Court denied the application because Plaintiff was unable to "show [that] it [was] 'very likely' that discovery would lead to identification of the Doe defendants . . . ." (*Id.* at 11.) Plaintiff brings this motion for leave to file a motion for reconsideration on the basis that the Court applied the wrong legal standard in evaluating Plaintiff's application.

## DISCUSSION

### A. The Court Failed to Correctly Apply the Applicable Legal Standard

The Court denied Plaintiff's discovery application on the basis that Plaintiff's application request was not "very likely" to lead to the identification of the Doe defendants. (ECF No. 18 at 11.) The Court based this decision on an erroneous interpretation of the holding in *Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir. 1980). (*See* ECF No. 18 at 4, 6, 11.) In *Gillespie*, the court held that the district court abused its discretion in denying early discovery because it was "very likely" that the requested early discovery would lead to the identities of the "John Doe" defendants. 629 F.2d at 643. The Court's denial of Plaintiff's discovery application does not logically flow from the decision in *Gillespie*. The decision in *Gillespie* does not stand for the proposition that discovery requests will be denied if a plaintiff is unable to prove that the discovery is "very likely" to reveal the identities of the unknown Doe defendants, as the Court claims. (ECF No. 18 at 4.) Instead, it stands for the proposition that it is an abuse of discretion to deny a discovery request when the discovery is "very likely" to reveal the identities of the unknown Doe defendants. *Gillespie*, 629 F.2d at 643.

The *Gillespie* court held that a court should grant a discovery motion "unless it is *clear* that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." 629 F.2d at 642 (emphasis added). While the Court's "very likely" standard is a high hurdle, the far more liberal "clear" standard actually set forth in *Gillespie* is readily met in this case. As Magistrate Judge Grewal may have put it best, "[while] the relationship between accused activity linked to an IP address and subscriber information associated with that IP address is imperfect at

best, this imperfection does not make it 'clear,' as our Circuit requires, that the discovery sought would fail in uncovering the identify of individuals responsible for that activity." *Diabolic Video Productions, Inc.*, No. 10-05865 (N.D. Cal. May 31, 2011), ECF No. 15 at *5 (quoting *VPR Internationale v. Does 1–1017*, No. 11-02068 (C.D. Ill. Apr. 29, 2011). Rather than determining whether it was "clear" that discovery would fail to uncover the identities of the Doe Defendants, the Court instead based its decision on a finding that discovery was not "at all likely" to do the same. (ECF No. 18, at 6:9.) In short, the Court made a finding of low probability rather than the necessary finding of a certainty of failure, thereby misconstruing and misapplying *Gillespie*. Had the Court correctly applied the legal precedent, then Plaintiff's discovery application would have granted. The Court's incorrect use of the decision in *Gillespie* amounts to "a manifest failure by the Court" under LR 7-9.

### B. Plaintiff's Procedures Are Consistent Both With the Law and With the Court's Prudential Concerns

The Court takes issue with the fact that it appears as though Plaintiff, and other similarly situated plaintiffs, do not litigate their claims and name anyone in similar lawsuits. (ECF No. 18 at 6.) The Court bases this on Plaintiff's statement at the November 29, 2011 hearing that "neither it nor any other plaintiff it is aware of has ever served a single defendant in one of these cases where early discovery has been granted." (*Id.*) This statement though, was based on Plaintiff's counsel's knowledge at the hearing, and did not account for instance where individuals had been named and served as defendants or were to be named as defendants. *See, e.g.*, Am. Compl. *Hard Drive Productions, Inc. v. Syed Ahmed, et al.*, No. 11-2828 (N.D. Ill. Oct. 25, 2011), ECF No. 25 (naming and serving Syed Ahmed as a defendant); Compl., *Millennium TGA, Inc. v. Tyree Paschall*, No. 12-792 (S.D. Cal. Apr. 2, 2012); Am. Compl., *Boy Racer, Inc. v. Philip Williamson*, No. 11-3072 (E.D. Ca. Dec. 12, 2011) (naming and serving Philip Williamson as a defendant); Compl., *Achte/Neunte Boll Kino v. Michael Famula*, No. 11-0903 (N.D. Ill. Feb. 9, 2011) (naming and serving Michael Famula as a defendant). None of these individuals would have been named and served as individuals if discovery had been denied in the original actions.

PLAINTIFF'S MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION    No. C-11-03825 HRL

Further, several factors contribute to the difficulty in naming defendants in cases such as these. First, individuals know whether or not they infringed on Plaintiff's copyrighted works, so it is common for culpable individuals to settle Plaintiff's claim before Plaintiff can name or serve them in the lawsuit. To the extent that the Court characterizes such settlements negatively as an "extrajudicial business plan" which it "will not assist," (*see* ECF No. 18 at 11:21–22), the Court ignores the maxim that law and public policy favor the settlement of disputes without litigation, or at least without trial and appeal. *See, e.g.*, *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 215 (1994) ("[P]ublic policy wisely encourages settlements . . . ."); *Williams v. First Nat'l Bank of Pauls Valley*, 216 U.S. 512, 595 (1910) ("Compromises of disputed claims are favored by the courts . . . ."); *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir. 1998) ("[T]he need for settlements is greater than ever before and without them our system of civil adjudication would quickly break down." (internal quotation marks omitted)); *Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially favored as a matter of sound public policy."). The policy of encouraging, rather than discouraging, early settlement is particularly important with regard to intellectual property claims, the full litigation of which may be inordinately complex and time-consuming. *See Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976). Because early settlement should be encouraged by the courts and not discouraged, especially in the area of intellectual property claims, the Court should grant Plaintiff's motion and reconsider those portions of its decision which speculate upon and declaim the motives of Plaintiff, other similarly situated plaintiffs, and putative defendants in choosing to offer or accept early settlement of meritorious legal claims.

Second, some courts have expressed concerns over the risk of innocent individuals being named in a lawsuit involving adult material. *See, e.g.*, *VPR Internationale v. Does 1–1017* (C.D. Ill. Apr. 29, 2011), ECF No. 15. As a result, Plaintiff, and other similarly situated plaintiffs, take great care to ensure that they have a very strong basis in fact to believe that they have correctly identified a John Doe infringer prior to naming and serving any defendants. Plaintiff has been forthcoming about the procedures it follows for this purpose. (ECF No. 16 at 4; *see also* ECF No. 18 at 4:24–6:8.)

These procedures are extra-judicial only insofar as they are designed to minimize the necessity of requesting further early discovery, and thereby to minimize the burden such further requests may place on the court system. Such care and diligence is one contributing reason why few alleged infringers are named and served as individuals, either in the original lawsuits where discovery was granted or in separate lawsuits. The Court interpreted Plaintiff's procedures as evidence that Plaintiff's requested discovery is not "very likely" to reveal the identities of the Doe Defendants, and even as evidence of "hav[ing] no desire to actually litigate." (ECF No. 18 at 6:5–6, 11:21–22.) However, because of the technological complexities involved in identifying defendants in Internet-based copyright infringement litigation, such care and diligence is necessary to ensure a strong basis in fact to support any court filing which contends that Plaintiff has identified a John Doe. Ensuring this strong basis is part of Plaintiff's counsel's legal and ethical obligations as officers of the court. Fed. R. Civ. P. 11(b)(3) (requiring that "factual contentions have evidentiary support, or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery"); *see also* Model Code of Prof'l Conduct R. 3.1 (2009) ("A lawyer shall not bring . . . a proceeding, or assert . . . an issue therein, unless there is a basis in law and fact . . . ."); *cf.* Cal. Rules of Prof'l Conduct R. 5-200 (2012) (providing similar requirement of advocacy and means "consistent with truth"). Because the Court misconstrued Plaintiff's procedures—which merely represent care and diligence in following Plaintiff's counsel's legal and ethical obligations—the Court should reconsider those portions of its decision which draw on those procedures to imply that Plaintiff is anything less than fully desirous of litigating its meritorious legal claims.

Third, the identifying information from the ISPs that Plaintiff relies on to eventually name defendants is time sensitive. If the information is destroyed before Plaintiff's discovery applications are granted, Plaintiff cannot name and serve anyone. For example, this Court dismissed a similar case for failure to name and serve anyone pursuant to Federal Rule of Civil Procedure 4(m). *AF Holdings LLC v. Does 1–135*, No. 11-3336 (N.D. Cal. Mar. 27, 2012), ECF No. 45. The Court dismissed the case even though the plaintiff had explained that the Court had yet to rule on several *outstanding motions* in order for the ISPs to comply with the plaintiff's subpoenas. *Id.*, ECF No. 38.

Without the ISPs' compliance, the plaintiff would have no way to name and serve anyone in order to satisfy the requirements of Rule 4(m). *Id.* Further, courts occasionally delay making preliminary rulings for so long that the information plaintiffs seek has already been destroyed. In this case, for example, the Court issued an order on Plaintiff's discovery application over *seven (7) months* after Plaintiff submitted it. (*See* ECF Nos. 6, 18.) Even if the Court had granted Plaintiff's discovery motion, the majority of the identifying information Plaintiff sought would have been destroyed through the ordinary course of business of the ISPs. Plaintiff explained as much to the Court. (ECF No. 6 at 8; ECF No. 6-1 ¶ 22.) Plaintiff cannot name and serve anyone if the courts prevent Plaintiff from obtaining the information necessary to do so.

### C. The Court's March 30, 2012 Order Would Leave Plaintiff, and Other Similarly-Situated Plaintiffs, With No Enforceable Remedy at Law for Clear Violations of Their Intellectual Property Rights.

The Court's March 30, 2012 decision should be reconsidered because it takes the unprecedented step of interpreting the law in such a way as to leave Plaintiff, and other similarly-situated copyright holders, with literally no enforceable remedy at law or in equity for Internet-based infringement of their works. The Court acknowledged that its decision would "frustrate . . . copyright holders," and indeed, in summarily declaring that "the technology that enables copyright infringement has outpaced technology that prevents it," the Court would foreclose any judicially-administered remedy for copyright infringement which occurs through systems which obscure the tracks infringers leave behind. (ECF No. 18 at 11:16–19.)

In its original motion, Plaintiff warned that such a ruling would "essentially render the federal copyright laws inapplicable to illegal Internet interconnected 'sharing.'" (ECF No. 6 at 25.) In its Order, the Court acknowledged its sympathy towards Plaintiff's argument "that lawsuits like this one are *the only way* for [copyright holders] to find and stop infringers." (ECF No. 18 at 11:16–21 (emphasis added).) The Court further acknowledged that "IP addresses are the only identifying feature plaintiffs can collect." (*Id.* at 8:21.) Yet, under the new standard devised by the Court, plaintiffs who suffer Internet-based infringement must establish that it is "very likely" that they will be able to take an observed IP address and identify a "John Doe" infringer—perhaps even in a single

step, so as to avoid the kind of "lengthy extra-judicial investigation" for which the Court indicated its disdain. (*Id.* at 4:24–26.) Such a standard represents a procedural "Catch-22." It is impossible to meet as a practical matter, and thus forecloses Plaintiff, and similarly situated plaintiffs, from the possibility of obtaining relief despite their meritorious legal claims. Such a standard could have wide-ranging and unforeseen effects on those who suffer injuries even beyond the realm of copyright infringement, including in the areas of libel, defamation, production and distribution of child pornography or any other area where potential defendants may hide behind IP addresses to commit illegal acts via the Internet. The law cannot and should not abide a wrong to be without a remedy.

The danger that the Court's Order poses to Plaintiff's intellectual property rights—as well as to Plaintiff's very existence as an entity—cannot be overstated. Plaintiff's copyrighted works are widely available and freely exchanged without Plaintiff's permission in clandestine communities of Internet pirates. For example, Exhibit A shows how a single search for "Amateur Allure" on one such site which "tracks" torrents showed 201 separate movies being swapped, with literally thousands of active participants. (*See* Ex. A.) These Internet pirates commit their illegal acts with the support of an active community—Exhibit B shows certain pseudonymous pirates requesting Plaintiff's content, and thanking each other for providing the same. (*See* Ex. B.) An entity like Plaintiff cannot defend itself against such mass, cooperative violations of its rights without the assistance of the courts. Through its legal actions, Plaintiff has been able to deter and dissuade such piracy—Exhibit C shows a pirate warning his clandestine community that Plaintiff was seeking his identity through legal process, and advising other pirates to "be safe" by avoiding Plaintiff's works. (*See* Ex. C.) The limited success that Plaintiff has seen to date in combating piracy by exercising its legal rights, however, cannot survive a ruling which prevents Plaintiff from taking even the first step toward identifying those who infringe upon its rights.

By effectively leaving Plaintiff with no remedy for Internet-based violations of its intellectual property rights, the Court's order may constitute a judicial taking. The Takings Clause has traditionally focused upon "a specific interest in physical or intellectual property." *Eastern Enterprises v. Apfel*, 524 U.S. 498, 554 (Breyer, J., dissenting) (citing *Ruckelshaus v. Monsanto Co.*,

467 U.S. 986 (1984)). In *Stop the Beach Renourishment, Inc. v. Florida Department of Environmental Protection*, a plurality of the U.S. Supreme Court recognized that a judicial action may be a taking for the purposes of the Fifth Amendment. 130 S. Ct. 2592, 2601–10 (2010) (plurality opinion). "If a legislature *or a court* declares that what was once an established right of private property no longer exists, it has taken that property, no less than if the State had . . . destroyed its value by regulation." *Id.* at 2602. Those takings in which private property's value is destroyed by regulation, mentioned by the plurality in *Stop the Beach Renourishment*, are (outside of two narrow categories) determined and governed by the standards set forth in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978), which identified three primary factors: (1) "[t]he economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the government action." *Lingle v. Chevron USA Inc.*, 544 U.S. 528, 538–39 (2005). As to the first two of the primary factors in the *Penn Central Transportation Co.* balancing test, Plaintiff has previously argued that it has "invested substantial sums of money to create" its copyrighted works, (ECF No. 6 at 1), and that content piracy over the Internet has created a "systemic" problem whereby it has become ever-easier for infringers to acquire and distribute "exact digital reproductions" of Plaintiff's works, which themselves are published exclusively in digital format. (ECF No. 6-1 ¶ 5.) In short, Plaintiff had a significant investment-backed expectation in profitably exploiting its creative works, bolstered by the Copyright Act. Yet, the Court's unprecedented legal standard would leave the Copyright Act nothing more than a paper tiger when it comes to protecting Plaintiff's validly copyrighted creative works from rampant infringement.

Indeed, the Court's March 30 Order has already been cited as the dawn of a new era of Internet piracy. Exhibit D shows a video posted recently on YouTube of a report by the cable news network "RT America" which described the Court's Order as "rul[ing] downloading porn is OK." (Ex. D.) While the Order does not say this directly, by roundly ruling that "the technology that enables copyright infringement has outpaced technology that prevents it," the Order would effectively close the door of the courthouse to an entire class of copyright infringement plaintiffs and

leave an increasingly-large category of copyrighted works—those which can be stored and reproduced in digital form—unprotected by the Copyright Act. (ECF No. 18 at 11:16–19.)

## CONCLUSION

The Court's requirement that Plaintiff "show it [is] 'very likely' that discovery would lead to identification of Doe defendants" is not the correct legal standard for evaluating Plaintiff's discovery application. Because the Court failed to apply the correct legal standard set forth in Plaintiff's discovery application, the Court decision amounts to "a manifest failure by the Court to consider material facts or dispositive legal arguments" under LR 7-9. As a result, the Court should grant Plaintiff's motion for leave to file a motion for reconsideration.

Respectfully Submitted,

Prenda Law, Inc.

**DATED: April 16, 2012**

By:      /s/  Brett L. Gibbs, Esq.

Brett L. Gibbs, Esq. (SBN 251000)
Of Counsel to Prenda Law, Inc.
38 Miller Avenue, #263
Mill Valley, CA 94941
blgibbs@wefightpiracy.com
*Attorney for Plaintiff*

## Certificate of Service

**I hereby certify** that a true and correct copy of the foregoing was served via the Court's CM/ECF system on April 16, 2012 on all counsel or parties of record who are deemed to have consented to electronic service.

　　　　　　　　　　　　　　　　　/s/ Brett L. Gibbs, Esq.
　　　　　　　　　　　　　　　　　Brett L. Gibbs, Esq.